IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| HALSEY FISCHER, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No: 3:12-CV-589 ) |
| GLOBALOPTIONS SERVICES, INC., | ) Judge Haynes ) Magistrate Judge Knowles |
| Defendant. | ) ) ) |

## CASE MANAGEMENT ORDER NO. 1

### I. Jurisdiction and Venue

The Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) and venue pursuant to 28 U.S.C. § 1391(a).

### II. Parties' Theories of the Case

**1. Plaintiff's Theory of the Case**

This is a lawsuit for the malicious prosecution of the Plaintiff by the Defendant by the civil action <u>GlobalOptions Services, Inc. v. Halsey Fischer</u>, Case No. 3:10-cv-0871, in the United States District Court for the Middle District of Tennessee (the "Federal Action"), which was commenced September 17, 2010, and voluntarily dismissed with prejudice with costs being assessed to GlobalOptions Services, Inc. (hereinafter "Global" or "Defendant") November 10, 2011. In the Federal Action, Global alleged that Fischer had violated three restrictive covenants contained in an employment agreement with Global, same being a covenant not to solicit Global's customers, a covenant not to solicit co-employees (with regard to co-employees Rusty Aaronson and Brett Douglas), and a covenant not to disclose purported confidential proprietary information. Global had its lawyers seek expedited written and deposition discovery of Fischer,

and issue subpoenas to Fischer's cellular telephone provider and personal internet service provider. Global also threatened Fischer's new employer with a lawsuit, and served his new employer with a subpoena containing over twenty enumerated items of documents, thus necessitating Fischer's new employer to employ legal counsel. At the time of the filing of the Federal Action, Global had lost no customers or clients whatsoever.

Fischer's counsel served discovery upon Global and took a 30(b)(6) corporate representative deposition of Global to discover each and every fact which Global claimed existed to support the contentions set forth in Global's complaint. Global's discovery responses, including the answers of its designated corporate representative, revealed no direct knowledge by Global of any violation of any restrictive covenant by Fischer.

At the time of the filing of the Federal Action, the only purported solicitation of one of Global's customers/clients that Global had any knowledge of by Fischer was a purported visit by Fischer with Rusty Aaronson to Global customer Gallagher Bassett in its Mechanicsburg, Pennsylvania office to purportedly solicit Gallagher Bassett's business from a gentleman named Dean Snyder, and this information Global had received by way of hearsay upon hearsay.

Global has now admitted in the instant case that it actually filed the Federal Action without having interviewed Dean Snyder with Gallagher Bassett, Rusty Aaronson, Brett Douglas, or anyone with Fischer's new employer, G4S Compliance and Investigations, Inc. ("G4S") to investigate whether or not Fischer had induced Aaronson or Douglas to leave their employ with Global, or had actually been in the office of Dean Snyder soliciting business of Gallagher Bassett, or had disclosed any confidential information to G4S. (Complaint ¶ 10, Answer ¶ 10.) Affidavits filed in support of Fischer's motion for summary judgment, including affidavits of Snyder, Aaronson, Douglas, and Mike Malone of G4S, emphatically proved that the

2

Case 3:12-cv-00589   Document 9   Filed 07/27/12   Page 2 of 10 PageID #: 98
Case 3:12-cv-00589   Document 10   Filed 07/31/12   Page 2 of 9 PageID #: 108

allegations contained in Global's complaint were false. Global did not oppose Fischer's motion for summary judgment. Instead, Global filed a motion to voluntarily dismiss the Federal Action with prejudice. However, by the time of Global's capitulation, Fischer had incurred attorneys' fees and litigation expenses of over $90,000.00, lost his job with his new employer, was unemployed for a period of time, sustained damage to his reputation, and endured mental suffering, which is compensable under Tennessee law.

Global's prosecution of Fischer in the Federal Action was malicious and was instituted without probable cause. Global failed to reasonably investigate the facts and circumstances surrounding its allegations against Fischer before instituting the Federal Action. Had Global reasonably investigated by, *inter alia*, interviewing the persons referred to hereinabove, it would have learned facts, the knowledge of which would have caused a reasonable person to not file the Federal Action it voluntarily dismissed. Probable cause is to be determined at the time Global filed the Federal Action. In determining whether or not probable cause existed at that time, the trier of fact may consider whether or not a reasonable person would have made a further investigation of the facts and circumstances before filing the action, what additional facts a reasonable investigation would have revealed, and whether, with the knowledge of those facts, a reasonable person would have filed the Federal Action. Global's malicious prosecution was intentional, willful, reckless and malicious, making Global liable not only for compensatory damages, but also punitive damages.

2. **Defendant's Theory of the Case**

Defendants GlobalOptions Services, Inc., incorrectly identified in the Complaint as GlobalOption Services, Inc. ("Defendant"), previously employed plaintiff Hasley Fisher ("Plaintiff"). Plaintiff resigned from his employment with Defendant on August 30, 2010, and

3
Case 3:12-cv-00589   Document 9   Filed 07/27/12   Page 3 of 10 PageID #: 99
Case 3:12-cv-00589   Document 10   Filed 07/31/12   Page 3 of 9 PageID #: 109

began working for a competitor of Defendant within a short time. There was an enforceable employment agreement in place between Plaintiff and Defendant at the time of Plaintiff's resignation that contained restrictive covenants, including a covenant not to solicit co-employees among others. Within days of Plaintiff's resignation from Defendant, two other employees of Defendant resigned from their employment and began working for the same competitor. These two employees worked closely with Plaintiff and/or were supervised by Plaintiff while working for Defendant.

The circumstances surrounding Plaintiff's resignation from Defendant and the timing of two other employees' resignation were such that Defendant reasonably believed that Plaintiff had violated the terms of his employment agreement. This, coupled with other happenings, led Defendant to file the Federal Action.

Defendant sought expedited discovery in the Federal Action on October 22, 2010, because Defendant reasonably believed that Plaintiff was engaged in ongoing solicitation of Defendant's customers in violation of his employment agreement and also feared that Plaintiff might be engaged in the solicitation of its current employees. Defendant sought such relief from the Court for the purpose of determining whether injunctive relief would be necessary and also to determine whether additional parties needed to be added to the Federal Action. The Court granted Defendant's request for expedited discovery.

Defendant deposed Plaintiff on November 15, 2010, and the scope of the deposition was limited in time and scope. Likewise on November 15, 2010, Plaintiff's counsel deposed a Rule 30(b)(6) corporate representative of Defendant. At such time, Defendant reasonably believed in the existence of information that supported the claims asserted against Plaintiff, including claims for breach of contract and breach of duty and loyalty. During the deposition, Defendant learned

that Plaintiff might still be in possession of confidential documents belonging to Defendant that Plaintiff had kept once he resigned from Defendant.

As discovery progressed in the Federal Action, Plaintiff filed a Motion for Summary Judgment, in which he submitted affidavits to contradict some of the allegations set forth in the Federal Action complaint. Defendant subsequently filed a Motion to Dismiss pursuant to Rule 41 of the Federal Rules of Civil Procedure. On November 10, 2011, the Court issued its Memorandum and Order, granting Defendant's Motion to Dismiss and denying Plaintiff's Motion for Summary Judgment as moot.

Defendant generally denies all allegations contained in Plaintiff's Complaint for Malicious Prosecution. Defendant specifically denies any acts of wrongdoing by it with respect to the Federal Action it filed against Plaintiff on September 17, 2010. At the time of filing the Federal Action, Defendant reasonably believed in the existence of information that supported the claims asserted against Plaintiff, including claims for breach of contract and breach of duty of loyalty. Defendant specifically denies that it initiated the Federal Action with malice or without probable cause. Defendant denies that it acted maliciously, recklessly, or in bad faith during the discovery phase of the Federal Action. Conversely, Defendant asserts that it acted in good faith and with a reasonable belief in both the existence of facts supporting its claims against Plaintiff and that those facts made out legally valid claims against Plaintiff.

Defendant denies that its actions or inactions were a direct or proximate cause of any of the damages claimed by Plaintiff. Defendant denies it is liable to Plaintiff in any amount. With respect to Plaintiff's claim for punitive damages, Defendant denies that Plaintiff is entitled to punitive damages in this case. Defendant did not act with the intent, malice, fraud, or recklessness that is required for an award of punitive damage.

5
Case 3:12-cv-00589   Document 9   Filed 07/27/12   Page 5 of 10 PageID #: 101
Case 3:12-cv-00589   Document 10   Filed 07/31/12   Page 5 of 9 PageID #: 111

III. Schedule of Pretrial Proceedings

A. Rule 26(a)(1) Disclosure

The parties shall make their Rule 26(a)(1)(A) through (E) disclosures within (30) days from the date of the initial case management conference.

B. **Meeting of Counsel and Parties to Discuss Settlement Prospects**

Ninety (90) days from the date of the initial case management conference, counsel and clients are required to have a face-to-face meeting to discuss whether this case can be resolved without further discovery proceedings. If a party, other than a natural person, is involved in this litigation, a representative who has the authority to settle shall attend this meeting on behalf of that party. After the meeting is conducted, counsel shall prepare a report and file it with the Court reflecting that the parties met and that the parties made a good faith effort to evaluate the resolution of this case. This report should also include whether the parties believed that one of the Alternative Dispute Resolution ("ADR") procedures under the Local Rules would further assist the parties in resolving this matter.

C. **Other Pretrial Discovery Matters**

As determined at the case management conference on July 30, 2012, this action is set for a jury trial on _June 4, 2013 at 9:00_

If this action is to be settled, the Law Clerk shall be notified by noon, _June 1, 2013_ If the settlement is reached thereafter resulting in the non-utilization of jurors, the costs of summoning jurors may be taxed to the parties dependent upon the circumstances.

A pretrial conference shall be held _May 20, 2013_, at _3:00 p.m._ A proposed pretrial order shall be submitted at the pretrial conference.

6

All discovery shall be completed by the close of business on December 15, 2012. All written discovery shall be submitted in sufficient time so that the response shall be in hand by December 1, 2012. All discovery related statements shall be filed by the close of business on December 31, 2012. No motions related to discovery or for a protective order shall be filed until a discovery/protective order dispute conference has taken place and the attorneys of record shall attend and meet, face-to-face, in an effort to resolve the dispute and a jointly signed discovery/protective order dispute statement is submitted setting forth precisely the remaining issues in dispute and the reasons why those issues remain unresolved.

All dispositive motions[1] and Daubert motions shall be filed by the close of business on February 12, 2013, and any response thereto shall be filed by the close of business on March 12, 2013. Any reply shall be filed by the close of business on March 26, 2013.[2]

Any motion to amend the pleadings or join parties shall be filed in sufficient time to permit any discovery necessary because of the proposed amendment to be obtained within the time for discovery. No amendments will be allowed if to do so will result in a delay in the disposition of the action by requiring an extension of the discovery deadline.

There shall be no stay of discovery pending disposition of any motions.

Interrogatories pursuant to Rule 33, Federal Rules of Civil Procedure, shall be limited to sixty (60) such interrogatories. Subparts of a question shall be counted as additional questions for purposes of the overall number. In all other respects, Rule 9(a), Local Rules of Court (effective March 1, 1994) shall govern.

By the close of business on December 15, 2012, the plaintiff shall declare to the

---

[1] No memorandum in support of or in opposition to any motion shall exceed twenty (20) pages. No reply shall be filed to any response unless invited by the Court.
[2] Strict compliance is required to Rule 8(b)(7), Local Rules of Court (effective March 1, 1994) relating to motions for summary judgment.

defendants (not to file with the Court) the identity of his expert witnesses and provide all the information specified in Rule 26(a)(2)(B).

By the close of business on January 15, 2013, the defendant shall declare to the plaintiff (not to file with the Court) the identity of its expert witnesses and provide all the information specified in rule 26(a)(2)(B).

Any supplements to expert reports shall be filed by the close of business on January 29, 2013. There shall not be any rebuttal expert witnesses.

To reduce the needless expenditure of time and expense, there shall not be any discovery depositions taken of expert witnesses. A party may, however, serve contention interrogatories and requests for admissions upon another party's expert. If these discovery methods prove ineffective, a party may move to take the deposition of the expert. In a diversity action, a treating physician is considered a fact witness unless the physician expresses opinions beyond the physician's actual treatment of the party.

For expert witnesses, the expert's Fed. R. Civ. P. 26(a)(2) report is considered to be the expert's direct examination testimony at trial. If an expert expects to expound his or her testimony beyond the wording of the expert's report, the party calling the expert shall inform the opposing party with the specifics of that expounding testimony at least 15 days prior to the dispositive motion deadline.

These rules on experts are to ensure full compliance with Rule 26(a)(2); to enable the parties to evaluate any <u>Daubert</u> challenges prior to filing dispositive motions; to avoid conflicts with the experts' schedules; and to avoid the costs of expert depositions.

Local Rule I 2(c)(6)(c) (effective March 1, 1994) relating to expert witnesses shall apply in this action, and strict compliance is required.

D.   **Estimated Trial Time**

At this time, the parties expect the trial to last approximately two to three days.

It is so **ORDERED**.

**ENTERED** this the 30th day of July.

_____
WILLIAM J. HAYNES, JR.
United States District Judge